# DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF PILOT COMMISSIONERS v CRAY

## Case No. 87-3626

State of Florida, Division of Administrative Hearings

May 24, 1988

### APPEARANCES OF COUNSEL

**H. Reynolds Sampson,** for petitioner.

**Margaret Mathews,** for respondent.

### OPINION OF THE COURT

JOYOUS PARRISH, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, a final hearing in the above-styled matter was held on March 28, 1988, at Fort Lauderdale, Florida, before Joyous Parrish, a duly designated Hearing Officer of the Division of Administrative Hearings. The parties were represented at the hearing.

### *BACKGROUND AND PROCEDURAL MATTERS*

This case began on April 24, 1987, when the Department of

Professional Regulation (Department) filed an Administrative Complaint against Edward M. Cray. This complaint alleged Respondent was negligent or inattentive in the performance of his piloting duties by using excessive speed in an approach to a berth, by failing to observe a dangerous condition developing, by failing to take corrective action in time to avoid a collision, and by implementing a wrong action. Petitioner alleged this conduct fell below the acceptable standard of safe pilotage. On August 4, 1987, Respondent executed an Election of Rights which disputed the allegations of fact and requested a formal hearing pursuant to Section 120.57(1), *Florida Statutes.*

The case was forwarded to the Division of Administrative Hearings for formal proceedings on August 20, 1987.

At the hearing, the Department presented the testimony of John C. Hanson, a consultant for the Department and an expert in marine incident investigation; David Therrien, an employee of the harbor master at Port Everglades; John A. Cummings, captain of the tug boat *Captain Nelson;* and Dr. Thomas Lee, an expert in marine currents and tides. Petitioner's exhibits 1, 2, and 3 were admitted into evidence. Respondent testified and offered the testimony of William B. Thorup, Jr., an expert captain/pilot for Port Everglades. The transcript of the proceedings was filed on April 18, 1988, and the parties were granted leave until April 28, 1988, to file their proposed findings of fact and conclusions of law. Subsequently, the parties requested an extension of the time to file their proposed recommended orders and such request was granted. The extension gave the parties until 5:00 p.m., May 9, 1988, to file their proposals. The parties then filed proposals which have been carefully considered in the preparation of this Recommended Order. Specific rulings on the proposed findings of fact are included in the attached Appendix.

## ISSUE

The central issue in this case is whether Respondent is guilty of the violation alleged in the Administrative COmplaint; and, if so, what penalty should be imposed.

## FINDINGS OF FACT

Based upon the testimony of the witnesses and the documentary evidence received at the hearing, I make the following findings of fact:

1. At all times material to the allegations, Respondent was a licensed pilot in the State of Florida having been issued License No. 0000025.

2. On January 15, 1986, Respondent boarded the ship *Act 5* as her state pilot for approaching an intended berth at Port Everglades.

182

3. The *Act 5* was over 700 feet long, had a single handed screw, a single rudder and was equipped with bow thrusters. The ship drew 34 feet at her stern on the date in question. The ship had a bulbous bow which protruded outwardly under the forward waterline.

4. A tugboat, the *Captain Nelson,* captained by John A. Cummings was beside the *Act 5* to assist in the berthing maneuver.

5. The approach to Port Everglades is negotiated through a narrow canal. Vessels seeking berth proceed through the canal, past a jetties area, and into a turning basin. Once inside the basin a turn is required in order to bring a ship parallel to the intended berth.

6. On January 15, 1986, the *Act 5* was to be berthed at a location on pier 3 identified as berth 17. In order to approach berth 17 a sweeping turn to port must be made.

7. On that date the *Captain Nelson* was positioned off the starboard bow during the *Act 5's* swing to port. Once this swing had been initiated, the Respondent ordered the tug to proceed to the port stern quarter. It was intended that the tug would assist to breast the ship beside the docking area.

8. After the tug had begun its trip from starboard bow to stern, Respondent realized that the ship's swing would not be sufficient to bring her parallel to the dock. Accordingly, the Respondent ordered the tug to hook up and to pull at full throttle to slow the ship and bring her parallel. Additionally, since it was apparent the ship might collide with the dock, the Respondent order the *Act 5* to reverse at full throttle.

9. Despite the corrective efforts, the *Act 5* did not swing sufficiently to port and her bulbous bow struck the underplatting of the dock at berth 17. The platting cracked and the fill behind it washed out. When the fill washed out, the road built on top collapsed and the dock eroded. Approximately sixty feet of dock surface was destroyed.

10. Unpredictable surface and subsurface currents in Port Everglades very dramatically affect docking procedures. The tides, which are repetitive, also affect docking maneuvers.

11. Given the fluctuating tides and currents within the Port Everglades turning basin, it is not uncommon for a ship's handling to be unpredictable.

12. Given the tide and current conditions known to Respondent on the date at issue, the collision was unpredictable and unforeseeable by a reasonably prudent pilot.

13. Given the times and speeds noted in the *Act 5's* "bell book," the Respondent approached the intended berth under prevailing standards used by other pilots at Port Everglades.

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction over the parties and the subject matter of these proceedings.

2. Rules 21SS-8.007(1)(e) and (k), *Florida Administrative Code,* provides:

(1) Any act of misconduct, inattention to duty, negligence or incompetence, or willful violation of any law or regulation including the Rules of the Road, applicable to a license state pilot or certificated deputy pilot, or any failure to exercise that care which a reasonable and prudent pilot or deputy pilot would exercise under the same or similar circumstances may result in disciplinary action. Examples of acts which may constitute a violation may include, but are not limited to:

\* \* \*

(e) Excessive speed.

\* \* \*

(k) Any disregard of safe practice, whether intentional or unintentional which does not meet acceptable standards of safe pilotage.

3. Section 310.101(1)(e) and (k), *Florida Statutes,* provides:

(1) Any act of misconduct, inattention to duty, negligence, or incompetence; any willful violation of any law or rule, including the rules of the road, applicable to a licensed state pilot or certificated deputy pilot; or any failure to exercise that care which a reasonable and prudent licensed state pilot or certificated deputy pilot would exercise under the same or similar circumstances may result in disciplinary action. Examples of acts by a licensed state pilot or certificated deputy pilot which constitute grounds for disciplinary action include, but are not limited to:

\* \* \*

(e) Excessive speed.

\* \* \*

(k) Engaging in any practice which does not meet acceptable standards of safe piloting.

4. The parties have not disputed the law to be applied to this case. They differ solely as to the facts: whether or not Respondent used excessive speed in the approach to berth 17, whether or not he failed to realize the speed was too great, and whether he delayed and took an inappropriate corrective measure.

5. Petitioner's expert has not piloted vessels of similar size and draft within Port Everglades. Moreover, other than a conclusion that Respondent's excessive speed caused the collision, the expert did not testify that such conduct or a failure to correct such conduct fell below the standard of safe pilotage. Petitioner argues that the collision is, of itself, sufficient to prove negligence on Respondent's part. This presumption has been adequately rebutted. In contrast, Respondent's expert determined Respondent's conduct to be within the standard at Port Everglades and to be appropriate under the circumstances. Moreover, the unpredictable surface and subsurface currents may have interfered with the docking procedure.

6. Additionally, the tug captain who assisted in the berthing effort and the harbor employee who witnessed the incident, testified and speed of the *Act 5* was typical for such maneuvers at Port Everglades. Moreover, the harbor employee testified that under the dock collapsed he did not realize the ship had made contact with the underplatting. This employee had presumed the fenders had absorbed any shock as in routine docking.

7. Under the circumstances of this case, Petitioner has not proved Respondent used excessive speed or exhibited conduct falling below acceptable standards of safe pilotage.

## RECOMMENDATION

Based on the foregoing Findings of Fact and Conclusions of Law, it is

RECOMMENDED:

That the Department of Professional Regulation, Board of Pilot Commissioners enter a Final Order dismissing the Administrative Complaint against Respondent.

DONE and RECOMMENDED this 26th day of May, 1988, in Tallahassee, Florida.